Ruffin, C. J.
 

 There seldom arise, upon as few facts as exist in this case, as many legal questions of interest. That respecting the advancement, and the effect upon it of the act of 1806, is particularly so. Another is whether a share of a general residue, or a distributive share of an intestate’s estate, be equitable property, out of which the Court of Equity should decree satisfaction of a judgment debt, even against persons resident here ; or is it in the nature of a chose in “action,” to be reached by the creditor through an assignment coerced by a
 
 capias ad satisfaciendum.
 
 As subsidiary to the latter question, it would be fit also to consider, what effect the statute, exempting females from imprisonment for debt, would have upon it. And' another question is, whether the Court should assume the jurisdiction and decree the satisfaction even out of the debtor’s equitable property here upon a return of
 
 nulla bona
 
 in an attachment against a non resident; or should not leave the creditor to his legal remedy in the country of the debtor’s domicil, or, at least, require him to establish that there, as well as here, the debtor had no property liable to legal process. In addition, it would be a subject for serious consideration, whether the Court would aid a judgment rendered in attachment on a bond obtained from.a married woman and not respecting her separate property, or whether those facts in themselves do not constitute a case of surprise and undue advantage taken of a person not
 
 suijuris
 
 and incapable of making defence., which would induce this Court to let the creditor get on as well as he could at law. Several of those points were made at the bar, and argued with
 
 *294
 
 much ability; and, perhaps, the Court might safely decide them upon the lights derived from the discussion. It is deemed best, however, to pass them by for the present, as the cause nray be decided, we think, upon another point, about which there seems to be little doubt.
 

 The Court holds, that the plaintiff cannot have a decree, because none that could be made would effectually protect the defendant Arrington for making the payment to the plaintiff, which it would require of him. Independent of that objection, it may be much doubted, as the bond •on which the demand arose, was made in Arkansas, whether the case, as against the non-resident judgment debtors themselves, does not fall with the sixth proviso of the first section of the act of 1787, which says that the act— authorising proceeding in equity against non-residents— shall not be construed to warrant proceedings against a person residing without the State, unless the ground or cause of action, on which the bill be brought, took place within the State. But admitting that the proviso does not embrace this case, and that the Court would decree between the plaintiff and the absent defendants, were they the only persons to be affected, it is quite clear that no decree ought to be made, which would also affect third persons, unless it would be a complete protection to them for doing whatever the decree should require of them. The Legislature did not intend, that, under color of a decree against a non resident, one should be made against a citizen, also, which nevertheless would leave him exposed to farther litigation and liabilities abroad. Such would be the case here. For, as Yarbrough and wife have not been served with process nor appeared in the cause, the decree would have no binding extra territorial effect; and at the suit of the present plaintiff, the Courts of Arkansas would not enforce the decree, if it were necessary to its execution to ask their aid,
 
 Irby
 
 v.
 
 Wilson,
 
 1 Dev. & Bat. Eq. 568. That would, indeed, be no reason,
 
 *295
 
 why the Courts of North Carolina should not decree against the non-residents in a case within the act of 1787; for they must obey the Legislature, and it would be for the plaintiff to consider what use he could make of a decree elsewhere, in case he should wish it. But it is otherwise in respect to a third person, resident here, who is brought in as a defendant, against whom a decree is asked, which affects both him and the absent party personally. In that case he has a right to say, the Court ought not to bind him unless the absent party can be also bound, as between them, so that the decree shall bar any claim of the one defendant or the other. Now, it is perfectly clear, if the plaintiff could not enforce this decree abroad against Yarbrough and wife, because they were not parties
 
 to
 
 it, that for the same reason it could not be set up as a defence by Arrington to a demand of Yarbrough and wife on him for her distributive share. The consequence would be, that Arrington dare not put his foot out of North Carolina without exposing himself to a suit for the distributive share, in which he would be compelled to pay it over again. That is so obviously unjust, that no Court ought to be drawn by any hardship into making such a decree, unless compelled by a positive legislative mandate. Such is the case in respect of attachment, at law. But there is no Statute in this State authorising attachments in equity, which in substance this is; and therefore, both in respect of the justice due to the absent parties, and, still more, in respect to the security of the garnishee, as he may be called, the Court cannot make the decree asked, but must dismiss the
 
 bill with
 
 costs.
 

 Per Curiam.
 

 Bill dismissed with costs.